UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STRIKE 3 HOLDINGS, LLC,

    Plaintiff,

v.                                                                 Case No. 8:20-cv-1328-T-33CPT

JOHN DOE subscriber assigned IP
address 68.200.77.243,

    Defendant.
_____/

**O R D E R**

Before the Court is the *Defendant's Motion to Quash Third-Party Subpoena on Charter Communications/Spectrum.* (Doc. 15). For the reasons discussed below, the Defendant's motion is granted.

I.

Plaintiff Strike 3 Holdings, LLC (Strike 3) initiated this action in June 2020, alleging copyright infringement against an unnamed defendant (Defendant).[1] (Doc. 1). According to Strike 3, it owns the rights to various adult films, which it distributes through websites and DVDs. *Id.* at ¶¶ 2–3. To combat an ongoing problem with

---

[1] While the Defendant's gender identity is unknown at this stage, the Court will use male pronouns throughout this Order because the complaint identifies the Defendant as "John Doe."

internet piracy, Strike 3 employs geolocating and infringement detection software to track the Internet Protocol (IP) addresses that download and share the company's copyright-protected material. *Id.* at ¶¶ 10, 17, 28–44. As a result of its investigation, Strike 3 identified an IP address, 68.200.77.243, as one which unlawfully downloaded, copied, and distributed forty-five of Strike 3's protected works through the use of the internet and a peer-to-peer file sharing protocol known as BitTorrent.[2] *Id.* at ¶¶ 4, 28–44. Strike 3 asserts, however, that its software only enables it to discern the IP address associated with this illicit conduct and that, to find out the actual name and address of the subscriber assigned to that IP address, it must look to the Internet Service Provider (ISP) affiliated with the IP address. *Id.* In its complaint, Strike 3 avers that it "originally moved to discover [the] Defendant's identity utilizing a state court procedure in Florida where Strike 3's infringement detection servers are located," but elected to initiate this lawsuit when the Defendant objected to the state court proceeding on the grounds that the matter should be litigated in federal court instead. *Id.* at ¶ 6.

Contemporaneously with the filing of its complaint in the instant action, Strike 3 submitted a "Notice of Pendency of Other Actions," advising that this case was not related to any pending or closed civil or criminal matter filed with this Court, or any other Federal or State court, or administrative agency. (Doc. 3).[3]

---

[2] For additional information on the BitTorrent protocol, *see Bubble Gum Prods., LLC v. Does 1–80*, 2012 WL 2953309, at *1 (S.D. Fla. July 19, 2012), and the cases cited therein.
[3] Strike 3 filed a duplicate of that notice at Document 9.

In July 2020, Strike 3 moved for leave to engage in limited, expedited discovery with the Defendant's ISP, Charter Communications, Inc./Spectrum (Spectrum), in order to learn the Defendant's identity. (Doc. 10). In support of its motion, Strike 3 claimed, *inter alia*, that the sole mechanism for it to ascertain the Defendant's true name and address was through Spectrum, that Spectrum would only maintain the requested information for a limited period of time, and that if this information was erased, Strike 3 would not be able to pursue its infringement action. *Id.* Strike 3 also certified that it was unable to confer with the Defendant prior to filing its motion because it did not know who the Defendant was and because the Defendant's state court counsel had not confirmed that he would be representing the Defendant in this case. *Id.* at 17. In granting Strike 3's motion the following day, the Court found that Strike 3 had established good cause to serve the subpoena on Spectrum. (Doc. 11).

The Defendant's motion to quash soon followed. (Doc. 15). Strike 3 has since filed a response in opposition to that motion (Doc. 18) and—with the Court's permission—the Defendant has submitted a reply thereto (Doc. 23). The Court has also heard oral argument on the matter. The Defendant's motion is therefore ripe for resolution.

II.

Federal Rule of Civil Procedure 26, as amended in 2015, generally governs the scope and timing of permissible discovery. That rule provides, in pertinent part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."

Civ. P. 26(b)(1).  Both the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida generally preclude a party from seeking discovery from any source before the parties participate in their required Rule 26(f) conference.  Fed. R. Civ. P. 26(d)(1); M.D. Fla. R. 3.05(c)(2)(B).  These rules admit of an exception, however, where the parties stipulate to early discovery or where—as Strike 3 did here—a party obtains court approval in advance.  Fed. R. Civ. P. 26(d)(1) (stating a party may seek discovery prior to Rule 26(f) conference "when authorized by stipulation . . . or by court order"); M.D. Fla. R. 3.05(c)(2)(B) (same).

A party seeking leave to conduct such expedited discovery must establish that there is "good cause" for doing so.  *Richardson v. Virtuoso Sourcing Group, LLC*, 2015 WL 12862517, at *1 (M.D. Fla. Oct. 27, 2015); *United States v. Gachette*, 2014 WL 5518669, at *1 (M.D. Fla. Sept. 26, 2014).  "In cases involving infringement via the internet, courts often evaluate good cause by considering factors such as the concreteness of the plaintiff's prima facie case of infringement; the specificity of the discovery request; the absence of alternative means to obtain the subpoenaed information; and the need for the subpoenaed information to advance the claim." *Strike 3 Holdings, LLC v. Doe*, No. 3:19-cv-335-J-34JBT (Doc. 13 at 2) (M.D. Fla. Apr. 3, 2019) (quoting *Manny Film LLC v. Doe*, 2015 WL 12850566, at *1 (M.D. Fla. May 18, 2015)).

The principles governing discovery under Rule 26 apply equally to Rule 45 subpoenas directed at non-parties.  *See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 2007 WL 4139466, at *5 (N.D. Ga. Nov. 14, 2007); 9A WRIGHT & MILLER, FEDERAL

PRACTICE & PROCEDURE § 2459 (3d ed.) (noting discovery standards outlined in Rule 26 are applicable to Rule 45 and collecting cases). In addition to these principles, Rule 45 itself sets forth certain procedural and substantive protections that the Court must consider in evaluating the propriety of non-party subpoenas.

Of relevance here, Rule 45 states, *inter alia*, that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). Rule 45 also provides, in pertinent part, that a subpoena "may command . . . production of documents . . . at a place within 100 miles of where the [subpoenaed] person . . . regularly transacts business in person[,]" Fed. R. Civ. P. 45(c)(2)(A), and that—on a timely motion—a court "must quash or modify a subpoena that . . . requires a person to comply beyond th[is] geographical limit[,]" Fed. R. Civ. P. 45(d)(3)(A)(ii).[4]

While a party generally does not have standing under Rule 45 to move to quash or modify a subpoena issued to a non-party, "[a]n exception exists where the party demonstrates a personal privacy right or privilege with respect to the subject matter of the subpoena." *Martin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 12156516, at *1 (M.D. Fla. 2013) (citing *Auto-Owners Inc. v. Se. Floating Docks, Inc.*, 231 F.R.D.

---

[4] Rule 45 sets forth additional grounds for quashing or modifying a subpoena, *see* Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv), but the Defendant does not rely on any of those other grounds in his motion.

426, 429 (M.D. Fla. 2005)); *see also Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (explaining that a party lacks standing to challenge a subpoena when it "is not in possession of the materials subpoenaed and [has] not alleged any personal right or privilege with respect to the materials subpoenaed").[5]

In the end, courts have "wide discretion" in defining the proper scope and timing of discovery, *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998), and may issue protective orders—including ones forbidding the requested discovery— where appropriate, *see, e.g., McBride v. Rivers*, 170 F. App'x 648, 660 (11th Cir. 2006). Rule 26(c), in particular, authorizes courts to enter orders limiting discovery upon a showing of "good cause" to protect a party or person from, among other harms, annoyance and embarrassment. Fed. R. Civ. P. 26(c); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"). On appeal, a court's decision to curtail discovery will not be reversed unless it is based upon a "clearly erroneous principle of law" or there is "no evidence that rationally supports" it. *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

---

[5] The Eleventh Circuit, in an en banc decision, adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

III.

The Defendant raises four main objections in support of his motion to quash the subpoena directed at Spectrum: (1) the subpoena violates Rule 45 because it asks for the production of information and documents more than 100 miles from Spectrum's place of business; (2) Strike 3's complaint would not withstand a motion to dismiss; (3) Strike 3 violated Local Rule 3.01(g) and Rule 45 by failing to confer with the Defendant and to provide him with proper notice in advance of serving the subpoena; and (4) the Court's finding of good cause to issue the subpoena was predicated upon misleading statements and misrepresentations made by Strike 3.[6] (Doc. 15).   Each of these arguments is addressed below.

A.

In support of his first argument, the Defendant points out that Strike 3's subpoena asks Spectrum's records custodian, located in St. Louis, Missouri, to deliver the requested items more than 1,000 miles away in Miami, Florida, which is far beyond the geographical boundaries established by Rule 45.  (Doc. 15-6).  This contention does not survive scrutiny.

To begin, the Defendant lacks standing to challenge the subpoena on the grounds that it would impose an undue burden on Spectrum to produce documents outside of Rule 45's 100-mile limit.  *See, e.g.*, *Thompson v. Does 1–5*, 2018 WL 8997256, at *2 (N.D. Ga. Feb. 8, 2018) (finding the defendant lacked standing to object to a

---

[6] The Court has re-ordered the Defendant's arguments for purposes of its analysis.

subpoena directed to a non-party that required compliance beyond Rule 45's geographical limit); *Trahan v. Sandoz Inc.*, 2014 WL 12628614, at *3 (M.D. Fla. July 23, 2014) (rejecting party's argument that subpoena must be quashed on geographical grounds because a party's "standing extends only so far as to assert its own interests, not those of the subpoenaed non-party").

The Defendant's claim that he has a privacy interest in his name and address and perhaps a reputational concern given the nature of the allegedly pirated material does not overcome this threshold defect.  Courts have routinely rejected this type of argument when addressing the propriety of non-party subpoenas like the one at issue here.  *See, e.g., Platinum Props. Inv'r Network, Inc. v. Does 1–2*, 2018 WL 7825045, at *3 (S.D. Fla. Nov. 19, 2018) ("[C]ourts . . . make clear that an internet subscriber has no protected privacy interest in his or her identifying information when same is sought for the purpose of maintaining a[n] [intellectual property] infringement action.") (quoting *Plastic The Movie v. Doe*, 2015 WL 5634625, at *4 (S.D. Fla. Sept. 24, 2015)); *Malibu Media, LLC v. Doe*, 2015 WL 574274, at *3 (M.D. Fla. Feb. 11, 2015) (finding that the privacy interest asserted by the alleged downloader was not a sufficient basis to quash a subpoena seeking the alleged copyright infringer's name, address, phone, number, and e-mail address) (citation omitted); *Malibu Media, LLC v. Does 1–14*, 2012 WL 6019259, at *4 (N.D. Ind. Dec. 3, 2012) ("[Doe's] argument that fulfilling the subpoena would invade his privacy and jeopardize his identity is insufficient to quash the subpoena as he has no expectation of privacy in the identifying information the subpoena seeks from the ISP.").  Indeed, a number of courts have observed that "ISP

subscribers have a minimal expectation of privacy in the transmission or distribution of copyrighted material." *Strike 3 Holdings, LLC v. Doe*, 2019 WL 1620692, at *2 (S.D.N.Y. Apr. 16, 2019) (quoting *Wiley & Sons, Inc. v. Doe Nos. 1–30*, 284 F.R.D. 185, 191 (S.D.N.Y. Sept. 19, 2012) and citing *Malibu Media, LLC v. John Does 1–11*, 2013 WL 3732839, at *6 (S.D.N.Y. July 6, 2013)); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 124 (2d Cir. 2010) (affirming district court's denial of motion to quash and finding an expectation of privacy for sharing copyrighted material is "simply insufficient to permit [a defendant] to avoid having to defend against a claim of copyright infringement").

Moreover, while the subpoena does, on its face, require production outside of Rule 45's geographical limit, Strike 3 represents that it has arranged with Spectrum for the electronic delivery of the requested information and materials. (Doc. 18 at 10). As a result, Strike 3 maintains that Spectrum will not be required to travel more than 100 miles in order to comply with the subpoena. *See* advisory committee notes to the 2013 amendment, Fed. R. Civ. P. 45 ("Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means. Such arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements."). In light of these representations, as well as for the other reasons stated above, the Defendant's

argument that the Spectrum subpoena should be quashed based on Rule 45's geographical limit fails.[7]

B.

The Defendant's next argument—that Strike 3's complaint is deficiently pleaded—is also without merit. The Defendant contends in this regard that the complaint alleges only that John Doe is the *subscriber* assigned IP address 68.200.77.243 but does not assert that John Doe is the *user* of that IP address. Relying on the Ninth Circuit's decision in *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018), the Defendant submits that averments "'based merely on a defendant's status as the subscriber of an IP address associated with infringing activity does not cross the threshold of 'plausibility' required of pleadings in federal court.'" (Doc. 15 at 15) (quoting *Cobbler Nevada*, 901 F.3d at 1145–47).

The problem with the Defendant's argument is that it is more appropriately grist for a motion to dismiss, not a motion to quash. As one court in the Northern District of California reasoned when confronted with a similar scenario:

> Although the Ninth Circuit affirmed dismissal in *Cobbler Nevada*, it did not suggest that the district court erred in allowing the plaintiff to take early discovery, including not only a subpoena served on an ISP, but also a deposition of the subscriber to whom the IP address was registered. District courts examining that decision have held that although an IP address and a subscriber's name alone may be insufficient to state a claim of infringement, *Cobbler Nevada* does not stand for the proposition that subpoenas may not be used to determine a subscriber's name.

---

[7] Nothing in this Order should be construed as precluding Spectrum from objecting to the subpoena on this ground, if it finds such an objection warranted.

*Strike 3 Holdings, LLC v. Doe*, 2019 WL 2996428, at *3 (N.D. Cal. July 9, 2019) (citations omitted) (collecting cases); *see also Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1211–12 (D.C. Cir. 2020) (reversing district court's denial of copyright owner's motion to subpoena ISP to discover subscriber's identity and dismissal of complaint, explaining that reliance on *Nevada Cobbler* is misplaced at such an early stage of the litigation). As a result, the Defendant's second argument fails as well.

C.

The Defendant's third and fourth arguments, touching on Strike 3's alleged misrepresentations to the Court and its alleged violations of the Federal and Local Rules, are addressed together. These two contentions present a troubling set of facts, which—as discussed below—undermine the good cause the Court relied upon in authorizing Strike 3's subpoena to Spectrum.

As noted above, Rule 45 requires that, prior to service of a subpoena duces tecum, notice and a copy of the subpoena must be served on each party. Fed. R. Civ. P. 45(a)(4). Failure to comply with this notice requirement has been found sufficient to quash a subpoena. *Firefighters' Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (affirming district court's quashing of non-party subpoenas due to a party's failure to provide prior notice); *Fla. Media, Inc. v. World Publ'ns, LLC*, 236 F.R.D. 693, 694– (M.D. Fla. 2006) (finding non-party subpoenas to be "void and unenforceable" where party serving the subpoenas failed to satisfy Rule 45's prior notice requirement); *Gonzalez v. RFJD Hldg. Co.*, 2014 WL 12600141, at *2 (S.D. Fla. Sept. 2, 2014) (quashing subpoena for failure to provide notice); *Mirra v. Jordan*, 2014

WL 2511020, at *3 (S.D.N.Y. May 28, 2014) ("[T]he notice provision is mandatory and failure to abide by this requirement constitutes grounds to quash a subpoena.").

Relatedly, Local Rule 3.01(g) provides, in pertinent part:

> Before filing any motion in a civil case . . . the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion. . . .

M.D. Fla. R. 3.01(g); *see also* M.D. Fla. R. 2.04(h) ("Attorneys and litigants should conduct themselves with civility and in a spirit of cooperation in order to reduce unnecessary cost and delay."). A violation of Local Rule 3.01(g) likewise "constitutes sufficient grounds to deny the relief sought by the noncompliant moving party." *Judkins v. Bloomen Int'l, Inc*, 2010 WL 2510665, at *2 (M.D. Fla. June 21, 2010) (quotation omitted). This point is emphasized in the Middle District of Florida's Discovery Handbook, which warns litigants that Local Rule 3.01(g) is "strictly enforced" and that motions failing to conform to the rule "may be summarily denied." MIDDLE DISTRICT DISCOVERY 3 (2015).

In the ordinary course, the requirements of Rule 45 and Rule 3.01(g) do not come into play until the parties have been properly served and have appeared in an action. Neither the letter nor the spirit of these rules, however, requires a party's formal appearance in a proceeding to become applicable. Indeed, in the Court's view, situations sometimes arise where a litigant can—and should—exercise good faith to

consult with an opposing party even before the party has entered a case.  This matter presents just such an occasion.

A brief review of the timeline of events leading to this action is instructive in this regard.[8]  As alluded to in Strike 3's complaint (Doc. 1, at ¶ 6), it initially filed a complaint in late January 2020 in state court against the Defendant and numerous other alleged downloaders (Doc. 15-2); *Strike 3 Holdings, LLC v. Unknown Infringers*, No. 2020-002019-CC-05 (Fla. Cty. Ct.).  In that state court proceeding, Strike 3 sought "only to identify the name and address of certain Internet subscribers whose IP address[es] ha[d] been identified as infringing [Strike 3's] copyrighted content so that [Strike 3] m[ight] bring a copyright infringement action." (Doc. 15-2).  Shortly after filing its state court action, Strike 3 obtained leave to subpoena such information from the ISP.  (Doc. 15-3).

Roughly three months later, in late April 2020, the Defendant—through his attorney, Jay Daigneault—moved to quash Strike 3's subpoena.  (Doc. 15-4).  Strike 3 responded to that motion soon thereafter by dismissing the Defendant as a party in the state case. (Doc. 15-5).  At the same time, Strike 3 sent Daigneault an email stating, among other things, "While we do not agree with the arguments in your motion [to quash], to conserve time and resources, Strike 3 agrees to dismiss your client and file a subsequent action against [him] in federal court in [his] district of domicile . . . ." *Id.*

---

[8] This timeline is primarily derived from the documents and emails included with the Defendant's motion, the authenticity of which is not disputed.

13

In early June 2020, Strike 3 followed through on its representation and filed the instant action. (Doc. 1). According to the Defendant, and uncontested by Strike 3, counsel for Strike 3 never advised Daigneault that it had actually commenced the federal case. Instead, in mid-July 2020, one day prior to submitting its motion for leave to serve early discovery in this proceeding, Strike 3's counsel sent the following email to Daigneault:

> Mr. Daigneault,
>
> I wanted to follow up on our correspondence dated April 29, 2020, wherein we informed you of our client's intent to file a federal action against your client, identified only as John Doe assigned IP address 68.200.77.243, to see if you would be representing this individual in the federal action. Please let me know.
>
> Thanks,
>
> Ramsey Villalon | Attorney at Law
> MAMONE | VILLALON

(Doc. 15 at 12). Although the instant case had been pending for more than a month by that point, Strike 3 merely referenced in this email its "intent" to file a federal action but did not disclose that such a suit had been initiated.

The next day, Daigneault responded:

> Mr. Villalon:
>
> My client has not made that determination yet. In the meantime, I have been authorized to inquire about pre-suit settlement. Please let me know if a settlement can be had on reasonable terms. Many thanks.
>
> Jay Daigneault, Esquire
> 
> TRASK DAIGNEAULT LLP ATTORNEYS

*Id.* at 13.

While still not clarifying that the instant matter was underway, Strike 3's counsel then conveyed a settlement offer to Daigneault as follows:

> Mr. Diagneault,
>
> My client is willing to extend an offer of $750 per infringement (the statutory minimum) which translates to $33,750. If this offer would result in a hardship to your client, we are willing to enter into a confidentiality agreement whereby you would provide me with your clients name, address and some financial information in order evaluate and reach a more practical resolution. Please confer with your client and let me know if this offer is acceptable or if I should send over the confidentiality agreement. If this offer is accepted, funding will need to be immediate and a notice of abeyance will be sent to the ISP.
>
> Thank you and I look forward to resolving this matter soon.
>
> Ramsey Villalon | Attorney at Law

*Id.* at 13.[9]

Notwithstanding this exchange, as alluded to previously, Strike 3 certified to the Court on the same day that:

> Because [Strike 3's counsel] does not know Defendant's identity, [counsel] could not confer with Defendant in accordance with Local Rule 3.01(g) prior to filing this motion. In an abundance of caution, [Strike 3's counsel] reach[ed] out to the last known counsel for Defendant to ascertain whether said attorney would appear for Defendant in this matter but, to date, has not received a response.

(Doc. 10 at 17). Strike 3 has not updated this certification since then.

Surprisingly, Strike 3 still stands by its representations. In fact, in its response to the Defendant's motion to quash, Strike 3 claims it is "perplexed" by the Defendant's contention that it "was somehow obligated to confer with an attorney [who did] not represent[ the] Defendant." (Doc. 18 at 2). It then goes on to assert

---

[9] The Defendant's submission does not reveal the time of day at which this email exchange between Daigneault and Strike 3 occurred.

that, "[t]aken to its logical conclusion, [the] Defendant could plausibly argue that [Strike 3] was required to contact every member of the Florida Bar to ascertain whether they were representing this still anonymous defendant." *Id.* at n.2.

Strike 3's position is misguided at best. By the Court's consideration, Strike 3 attempted to have it both ways at the time it sought the Court's permission to serve its subpoena on Spectrum. On the one hand, it represented to the Court that it could not confer with the Defendant regarding the subpoena, while on the other hand it was simultaneously engaging in negotiations with the Defendant's state-court counsel to settle Strike 3's copyright infringement claim against the Defendant in this action. These two positions are difficult, if not impossible, to reconcile.[10]

Under the circumstances, the Court believes it was incumbent upon Strike 3 to advise the Defendant's state court counsel (with whom it was actively attempting to dispose of this infringement action) of the ongoing federal litigation, to engage in good faith efforts with that attorney regarding its intent to serve a non-party subpoena, and to be more forthcoming with the Court about its efforts. Furthermore, because the Court's Order granting Strike 3 leave to conduct early discovery rested, at least in part, upon Strike 3's representations that it was unable to confer with opposing counsel as mandated by Rule 3.01(g) and that it had no alternative means of pursuing its

---

[10] The Court likewise finds it concerning that Strike 3's notices of related cases (Docs. 3, 9) did not expressly advise the Court of the state court action. While seeking different relief, the two matters do appear related and, despite counsel's urging to the contrary, the state court proceeding should have been identified in the notices. The fact that Strike 3 referenced the state court action in its complaint did not absolve it of its obligation to comply with this disclosure requirement.

copyright infringement claim without the Spectrum subpoena, the relief the Court afforded to Strike 3 in that Order is tainted. In short, the information and evidence now before the Court undermine the "good cause" upon which its authorization of Strike 3's expedited discovery was originally predicated. *See Richardson*, 2015 WL 12862517, at *1 (noting that expedited discovery is permitted by court order upon a showing of "good cause"); *Bradley v. King*, 556 F.3d 1225, 1229 (11th Cir. 2009) ("A district court has wide discretion in discovery matters and [appellate] review is 'accordingly deferential.'") (citation and quotation omitted).

The best approach, therefore, is to quash the Spectrum subpoena and to permit the parties to confer in good-faith—either in-person, over the phone, or via video conference—regarding a resolution of this matter. *Cf. Blunt v. Fin. Bus. & Consumer Sols., Inc.*, 2017 WL 3896659, at *2 (M.D. Fla. Sept. 6, 2017) (vacating order that was entered as a result of misrepresentation to the court). If no agreement can be reached after the parties have adequately consulted, the Court can re-visit whether good cause exists to allow discovery prior to the parties' Rule 26(f) conference.

### IV.

In light of all of the above, it is hereby ORDERED:

1. *Defendant's Motion to Quash Third-Party Subpoena on Charter Communications/Spectrum* (Doc. 15) is granted, and the subpoena directed to Spectrum is quashed.

2. The quashing of this subpoena is without prejudice to Strike 3's rights to seek either a stipulation from the Defendant or a Court order permitting the Court

to reissue a subpoena seeking the Defendant's name and address, provided Strike 3 has first complied with Rule 45's notice and Local Rule 3.01(g)'s conferral requirements.

      3.      The Court cautions Strike 3's counsel that future representations which evidence a lack of candor to the Court or future attempts at obfuscation which violate the Court's rules may result in sanctions.

      4.      Strike 3's counsel is directed to serve a copy of this Order upon Spectrum and file a notice of compliance with same.

DONE and ORDERED in Tampa, Florida, this 7th day of December 2020.

*/s/ Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record